FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 27, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRENT M.,[1] | No. 1:19-cv-03014-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

1    If the severity of the claimant's impairment does not meet or exceed the

2    severity of the enumerated impairments, the Commissioner must pause to assess

3    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4    defined generally as the claimant's ability to perform physical and mental work

5    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6    416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7        At step four, the Commissioner considers whether, in view of the claimant's

8    RFC, the claimant is capable of performing work that he or she has performed in

9    the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

10   capable of performing past relevant work, the Commissioner must find that the

11   claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

12   performing such work, the analysis proceeds to step five.

13       At step five, the Commissioner considers whether, in view of the claimant's

14   RFC, the claimant is capable of performing other work in the national economy.

15   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

16   must also consider vocational factors such as the claimant's age, education and

17   past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

18   adjusting to other work, the Commissioner must find that the claimant is not

19   disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

20

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 9, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of September 15, 2013. Tr. 311-16. The application was denied initially, Tr. 211-14, and on reconsideration, Tr. 219-21. Plaintiff appeared before an administrative law judge (ALJ) on July 27, 2017. Tr. 138-80. On March 6, 2018, the ALJ denied Plaintiff's claim. Tr. 13-37.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 9, 2015. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: status post motor vehicle accident with reported skull fracture and traumatic brain injury, status post foot fracture, migraines, major depressive disorder, narcissistic personality disorder, and anxiety. Tr. 18-19.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20-22. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> No bright lights, only moderate indoor lighting; no exposure to hazardous conditions; never climb ladders, ropes, or scaffolds; and occasional balance. [Plaintiff] is capable of simple routine tasks that involve no interaction with the public, occasional interaction with co-workers but no tandem or cooperative work activity in other words solitary work but co-workers can be in the vicinity, and occasional interaction with supervisors, thus, largely solitary activity.

Tr. 23.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 29. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper, laundry worker II and cook helper. Tr. 30. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. *Id.*

On November 30, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 2-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-two analysis;

2. Whether the ALJ conducted a proper step-three analysis;

3. Whether the ALJ's RFC is supported by substantial evidence;

4. Whether the ALJ properly evaluated the medical opinion evidence;

5. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

6. Whether the ALJ properly evaluated the lay witness testimony.

ECF No. 14 at 2.

## DISCUSSION

### A. Step-Two Analysis

Plaintiff contends the ALJ erred by failing to identify the following impairments as severe at step two: seizures, dizziness/vertigo, and tinnitus. ECF No. 14 at 3-6.

ORDER - 8

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §416.908 (2010).[3]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing

---

[3] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised. The Court applies the version that was in effect at the time of the ALJ's decision.

ORDER - 9

with changes in a routine work setting.  20 C.F.R. § 416.921(a) (2017); SSR 85-28.[4]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, the ALJ considered the record concerning the challenged impairments, but concluded these conditions were not medically determined impairments, and in the alternative, not severe as they did not more than minimally impact Plaintiff's ability to perform basic work activities.  Tr. 19-20.

*1. Seizures*

Plaintiff argues the ALJ erred by not finding seizures as a severe impairment.  ECF No. 14 at 3-5.

---

[4] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

First, the ALJ found that Plaintiff sought limited treatment for seizures during the relevant period.  Tr. 19.  While Plaintiff alleges a disability onset in September of 2013, the ALJ noted Plaintiff did not mention seizures until November of 2015.  Tr. 19, 1277, 1418.  While Plaintiff did mention seizures to mental health providers earlier, the ALJ is correct in that Plaintiff did not mention seizures to a provider to seek treatment for seizures until November of 2015.  Tr. 1233, 1242 (reporting seizures at mental health appointments); Tr. 1247 (reporting seizures at a medication management appointment).

Once he sought care for seizures, Plaintiff was prescribed valproic acid.  Tr. 1278.  After self-discontinuing the medication, Plaintiff did not seek additional care for his seizures.  Tr. 1359.  Plaintiff has not undergone an electroencephalography (EEG) nor any other studies for his seizures, despite a referral to obtain an EEG to confirm seizures.  Tr. 1236.

Plaintiff did not see a neurologist until July of 2017.  Tr. 1418.  Plaintiff reported his seizures had been under control for eight months and no treatment was requested or recommended for his seizures.  *Id.*  Plaintiff's gabapentin dose was increased to try to help decrease the frequency and severity of his headaches.  Tr. 1420.  The record indicates Plaintiff was to return for a follow up in three and a half months.  Tr. 1420.  Plaintiff testified at his July 2017 hearing that he would be seeing the neurologist again and the ALJ indicated he wanted to review the records

from the upcoming appointment. Tr. 167. While Plaintiff submitted multiple additional records after the hearing and prior to the ALJ's March 2018 decision, there are no additional records from the neurologist. *See* Tr. 47-53, 55-143.

Second, the ALJ noted that Plaintiff has reported his seizures were controlled with medication. Tr. 19. Plaintiff testified that cannabis has controlled his seizures. Tr. 146-47. Plaintiff consistently reported that his seizures were controlled. Tr. 1359 (June 2016); Tr. 1288 (August 2016); Tr. 1281 (February 2017); Tr. 1331 (May 2017); Tr. 1411 (June 2017).

Third, the ALJ found Plaintiff's reports regarding the frequency of seizures and when they last occurred have varied. Tr. 19. Dr. Reinmuth diagnosed Plaintiff with epilepsy in November of 2015, when Plaintiff reported he had three seizures since his September 2013 accident. Tr. 1278. He was started on valproic acid. *Id.* Plaintiff saw Dr. Reinmuth again in December of 2015 for a cough and March of 2016 for shoulder pain, but Plaintiff did not mention any recent seizures at either appointment. Tr. 1385, 1387. In January of 2016, Plaintiff reported at a medication management visit that his seizures did not happen often. Tr. 1316.

While Plaintiff reported he had a seizure in jail in July of 2016, no medical records were provided from Plaintiff's reported treatment in the jail. Tr. 1312. This is also inconsistent with later reports that he had not had any seizures since

prior to July of 2016.  Tr. 1358 (December 2016 report of no seizures for six months); Tr. 1338 (March 2017 report of no seizures for over a year).

Plaintiff argues there is evidence demonstrating his seizures are a severe impairment.  ECF No. 14 at 3-5.  However, the evidence cited by Plaintiff are records demonstrating Plaintiff's inconsistent self-report regarding the seizures. Plaintiff reported he had experienced 10 to 20 seizures after his accident.  Tr. 1338. Yet, in November 2015, Plaintiff reported he had experienced three seizures to date.  Tr. 1277.  In January 2016, Plaintiff reported one "little" seizure, Tr. 1316, and in July 2016, Plaintiff reported one seizure, Tr.1312.  In August 2016, Plaintiff reported his seizures were controlled and did not report any further seizures after that date.  Tr. 1288.

There is no documentation of the reported seizures having ever been observed by a medical provider or a third party, nor documented by an EEG. Plaintiff's mother completed a questionnaire regarding Plaintiff's seizures in June 2015.  Tr. 351-53.  She reported Plaintiff had one to three seizures every week but had not had a seizure for four weeks.  Tr. 351.  However, she wrote that she had not witnessed any of Plaintiff's reported seizures.  *Id.*  The ALJ's finding is rational and supported by substantial evidence.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (recognizing that when the evidence

in the record is subject to more than one rational interpretation, the court defers to

the ALJ's finding).

Moreover, Plaintiff failed to establish any harmful error resulting from the

ALJ's decision to find Plaintiff's seizure condition as a non-severe impairment.

Even if the ALJ should have determined that the seizure condition is a severe

impairment, any error would be harmless because the step was resolved in

Plaintiff's favor. *See Stout v. Comm'r Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th

Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes

no showing that his seizure condition creates limitations not already accounted for

in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's

decision bears the burden of showing harm). The ALJ found seizures were not

medically determinable or alternatively were not severe but did include seizure

precautions in the RFC. Tr. 20. Plaintiff argues his seizures reasonably interfered

with work tasks for a period of time but fails to specify any limitations that were

not accounted for in the RFC. Thus, any error would be harmless.

### 2. *Dizziness/vertigo*

Plaintiff argues the ALJ erred by not finding his dizziness/vertigo as a severe

impairment. ECF No. 14 at 5.

First, the ALJ found that Plaintiff had complained of dizziness/vertigo but

there was no evidence that Plaintiff's dizziness/vertigo is a medically determinable

impairment (MDI).  Tr. 19.  There must be objective evidence, from an acceptable

medical source, that establishes the existence of an impairment.  20 C.F.R. §

416.921.  Here, a non-acceptable medical source prescribed Plaintiff medication

based on his complaints of vertigo, but there are no records indicating a physical

examination or testing was performed to diagnose vertigo.  Tr. 19 (citing Tr. 1280,

1358).  Plaintiff also complained of dizziness to an acceptable medical source, Dr.

Lee, however, Dr. Lee stated the symptom was "likely" vertigo, without

performing any testing nor prescribing medication.  Tr. 19 (citing Tr. 1416-21).

Second, the ALJ alternatively found that even if the condition is medically

determinable, it is not severe.  Tr. 19.  An impairment is not severe if it does not

significantly limit a claimant's physical or mental ability to do basic work

activities.  20 C.F.R. § 416.921(a) (2017); SSR 85-28.  While the ALJ did not

provide a separate analysis of why the condition is not severe, the cited evidence

demonstrates Plaintiff rarely complained of dizziness/vertigo and did not receive

ongoing treatment for the symptom.  Tr. 19 (citing Tr. 1280, 1358, 1416-21).

Plaintiff contends that the ALJ erred because vertigo was diagnosed, and a

test confirmed the diagnosis.  ECF No. 14 at 5.  Plaintiff reported experiencing

vertigo on several occasions.  Tr. 1277, 1349, 1411, 1420.  However, Plaintiff did

not seek ongoing treatment nor evaluation for the condition.  Further, Plaintiff does

not argue that the dizziness or vertigo caused any limitations that significantly limit

his ability to perform basic work activities. ECF No. 14 at 5-6. Plaintiff only states that his conditions limit his ability to "hear, maintain balance and stay upright, or to function at all." *Id.* at 6. There are no allegations of any specific, quantified limitations that were not included in the RFC and there is no objective evidence of Plaintiff's alleged difficulties with balance. As such, Plaintiff fails to meet his burden. Further, any error would be harmless given the ALJ's inclusion of limitations regarding exposure to hazards, climbing and balancing, and lack of any additional alleged limitations that were not including in the RFC. *See Stout,* 454 F.3d at 1055; *Burch*, 400 F.3d at 682; *see also Shinseki*, 556 U.S. at 409-10.

### 3. Tinnitus

Plaintiff argues the ALJ erred by not finding his tinnitus as a severe impairment. ECF No. 14 at 5-6.

The ALJ found Plaintiff complained of tinnitus but he did not undergo any testing for tinnitus, and his hearing was documented as normal. Tr. 19, 1277. Additionally, Plaintiff's only reported treatment for tinnitus was his use of medication that was prescribed for other conditions. Tr. 19 (citing Tr. 1210-15, 1277-78, 1316). Plaintiff was diagnosed with tinnitus and hearing loss. Tr. 1119, 1278. However, the diagnoses appear to be based on self-report as there are no audiological examinations in file and the record indicates plaintiff complained of decreased hearing and tinnitus. Tr. 753, 1277. Plaintiff needed an ear/nose/throat

(ENT) evaluation but there is no evaluation in file. Tr. 753. While Plaintiff

reported experiencing tinnitus on a regular basis, Tr. 1277, he did not report

hearing loss, he did not report any tinnitus symptoms at most appointments and did

not seek an evaluation or further treatment for tinnitus. He also reported

hydroxyzine improved his tinnitus. Tr. 1316.

Plaintiff alleges only that his tinnitus impacts his ability to "hear" and the

RFC does not account for his tinnitus. ECF No. 14 at 6. Plaintiff does not allege

any specific limitations that the ALJ failed to account for in the RFC. The

objective evidence does not demonstrate any limitations due to tinnitus. As such,

Plaintiff fails to meet his burden. Further, any error would be harmless given the

lack of any allegation of specific limitations the ALJ did not include in the RFC.

*See Stout,* 454 F.3d at 1055; *Burch*, 400 F.3d at 682; *see also Shinseki*, 556 U.S. at

409-10. Plaintiff is not entitled to remand on these grounds.

**B. Step-Three Analysis**

Plaintiff argues the ALJ erred at step three by failing to find Plaintiff's

migraines equal Listing 11.02B. ECF No. 14 at 6-9.

At step three, the ALJ must determine if a claimant's impairments meet or

equal a listed impairment. 20 C.F.R. §§ 416.925, 416.926. The Listing of

Impairments "describes each of the major body systems impairments [which are

considered] severe enough to prevent an individual from doing any gainful

activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925(a). To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. § 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 416.925. The claimant bears the burden of establishing he meets a listing. *Burch*, 400 F.3d at 683. "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Listing 11.02B requires that the migraines occur at least once per week for three consecutive months, despite adherence to prescribed treatment. 20 C.F.R. § 404, Appendix 1 to Subpart P, § 11.00. When determining if a claimant's condition may equal Listing 11.02, the following considerations are relevant: any detailed descriptions from an acceptable medical source of the typical headache events, including all associated phenomena; the frequency of the headache events; adherence to prescribed treatment; side effects of treatment; and limitations in functioning that may be associated with the headache disorder or its treatment. SSR 19-4p.

The ALJ found Plaintiff's migraines did not equal Listing 11.02, as his migraines did not satisfy the required frequency or functional effects despite prescribed treatment. Tr. 21. In his step three analysis, the ALJ referenced his later analysis of Plaintiff's migraines. *Id.*

First, the ALJ considered the objective evidence, or lack thereof, that demonstrates the frequency and severity of Plaintiff's migraines. Tr. 21, 25. The frequency of migraines is a relevant consideration in determining if a claimant's migraines is of equal severity to Listing 11.02B. *See* 20 C.F.R. § 404, Appendix 1 to Subpart P, § 11.00, SSR 19-4p. The ALJ found Plaintiff did not mention migraines until 2015, two years after his alleged onset date. Tr. 25. The ALJ noted a one-year gap in treatment for migraines, lasting until December 2016. Tr. 26. Additionally, while Plaintiff reported light sensitivity and needing to wear sunglasses, there is no documentation of the symptom of his wearing sunglasses in the record. *Id.* While Plaintiff alleges he continually suffered severe migraine symptoms, the records demonstrate he reported improvement. Tr. 1316, 1420.

Plaintiff argues the records demonstrate he experienced migraines at least once per week for three consecutive months, despite adherence to prescribed treatment. ECF No. 14 at 7. Plaintiff cites to records in January 2015, November 2015, July 2016, December 2016, March 2017, May 2017 and June 2017, to support his claim. *Id.* (citing Tr. 1203, 1277, 1312, 1329, 1334, 1358, 1411).

These records are primarily Plaintiff's self-report; for example, the July 2016 record is Plaintiff's report that he had a migraine in jail, but the jail records were not provided. Tr. 1312.

Further, none of the cited records demonstrate any objective evidence that Plaintiff experienced migraines for three consecutive months despite adherence to treatment. There are multiple gaps in the record spanning several months. While there are records where Plaintiff reported migraines in March, May and June 2017, there are no records from April 2017. In May 2017, Plaintiff did not report whether he had experienced migraines weekly in April 2017. Tr. 1329-36. Additionally, in March 2017, Plaintiff still had not begun taking prescribed medication; as such, even if Plaintiff was experiencing migraines in March, he was not adhering to his treatment plan. Tr. 1342.

Second, the ALJ considered the Plaintiff's failure to pursue prescribed treatment. Tr. 25-26. Listing 11.02B requires adherence to prescribed treatment. 20 C.F.R. § 404, Appendix 1 to Subpart P, § 11.00. In March 2017, Plaintiff still needed to pick up his prescription for Imitrex despite the fact he had been prescribed Imitrex in December 2016. Tr. 1342, 1368. Plaintiff argues the ALJ misstated the record and claims the record states he was taking Imitrex (sumatriptan). ECF No. 14 at 18. However, the cited records actually state Plaintiff was prescribed sumatriptan, Tr. 1530, but he was "not taking" the

sumatriptan, Tr. 1354.  While Plaintiff reported taking a medication in March

2017, Tr. 1344, and Plaintiff alleges that medication was the sumatriptan, ECF No.

14 at 18-19, the record makes it clear that is inaccurate; Plaintiff had not yet picked

up the sumatriptan, Tr. 1342.  It appears Plaintiff was taking gabapentin at that

time.  *Id.*  In March and June 2017, one of Plaintiff's treating providers suggested

Plaintiff consider propranolol or topiramate for his migraines.  Tr. 1343, 1379.

However, there is no indication he began either medication.

Third, the ALJ found Plaintiff's activities were inconsistent with his reported

limitations due to migraines.  Tr. 26.  The claimant's functional activities and

limitations are a relevant consideration.  SSR 19-4p.  Plaintiff reported driving,

spending time with a friend, and playing video games.  Tr. 26.  Plaintiff has also

reported working in landscaping, enjoying camping, rock climbing, hiking and

being outside, doing yoga, cooking, completing housework including laundry and

yardwork and lifting weights.   Tr. 1211-12, 1351, 1418.

The ALJ's conclusion that Plaintiff's migraines do not equal Listing 11.02B

is supported by substantial evidence.

**C. RFC Assessment**

Plaintiff faults the ALJ for not incorporating his reported migraine-related

restrictions into the RFC.  ECF No. 14 at 8-9.  Specifically, Plaintiff argues the

ORDER - 21

ALJ erred in not including limitations in the RFC related to loud noises and humidity. *Id.*

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158.

Here, the ALJ found there is no evidence of Plaintiff's reported need for limitations related to humidity and noise. Tr. 27. In support of his argument that there is evidence of the limitations, Plaintiff cites to his self-report of difficulty with mowing due to the noise aggravating his migraines, and two treatment notes where Plaintiff reported noise and heat aggravated his migraines. ECF No. 14 at 8 (citing Tr. 56, 130, 1255). Plaintiff's mother also stated Plaintiff's migraines are affected by noise and humidity. Tr. 446. The record contains several other occasions where Plaintiff's report of noise aggravating his migraines was documented. Tr. 64, 83, 93, 103, 121. However, these records also indicate his migraine symptoms were relieved by prescription medication, Tr. 64, 103, and his

symptoms worsened when he self-discontinued his medications, Tr. 121-22. There is only one report of humidity impacting his migraines. Tr. 445. None of Plaintiff's treating providers have recommended or opined that Plaintiff should avoid noise nor humidity. While Plaintiff testified light impacts his migraines, he did not mention noise or humidity at his hearing. *See* Tr. 138-80.

The evidence demonstrates that Plaintiff reported an issue with humidity on a single occasion and while he has reported issues with noise on multiple occasions, he also reported relief of his symptoms with medication. While Plaintiff urges a different interpretation of the evidence, the ALJ's determination was reasonable and supported by substantial evidence. *See Batson,* 359 F.3d at 1195. Plaintiff is not entitled to remand on these grounds.

**D. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of Marybeth Wheeler, ARNP; Olegario Ignacio, M.D.; Jan Lewis, Ph.D.; and John Gilbert, Ph.D. ECF No. 14 at 9-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

ORDER - 23

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER - 24

"Only physicians and certain other qualified specialists are considered
'[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.
2014) (alteration in original); *see* 20 C.F.R. § 416.902[5] (acceptable medical sources
include licensed physicians, licensed or certified psychologists, licensed
optometrists, licensed podiatrists, qualified speech-language pathologists, licensed
audiologists, licensed advanced practice registered nurses, and licensed physician
assistants). However, an ALJ is required to consider evidence from non-acceptable
medical sources, such as therapists. 20 C.F.R. § 416.927(f).[6] An ALJ may reject
the opinion of a non-acceptable medical source by giving reasons germane to the
opinion. *Ghanim*, 763 F.3d at 1161.

    *1. Ms. Wheeler*

    Ms. Wheeler, an advanced registered nurse practitioner, opined Plaintiff can
work up to two to three hours per day, and he is limited to working light duty, with
no climbing ladders, no driving machinery, and if he "states that his arms have

---

[5] Prior to March 27, 2017, the definition of an acceptable medical source was
located at 20 C.F.R. § 416.913.

[6] Prior to March 27, 2017, the requirement that an ALJ consider evidence from
non-acceptable medical sources was located at 20 C.F.R. §§ 404.1513(d),
416.913(d).

ORDER - 25

gone numb, no more lifting during that day." Tr. 1286. The letter states his restrictions are "due to medical condition [sic]." *Id.* The ALJ gave Ms. Wheeler's opinion minimal weight. Tr. 28. The ALJ included restrictions regarding ladders and dangerous machinery in the RFC but did not accept the other limitations. *Id.* As Ms. Wheeler is not an acceptable medical source, the ALJ was required to give germane reasons to discount Ms. Wheeler's opinion. *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Ms. Wheeler did not give any rational for restricting Plaintiff to working two to three hours per day. Tr. 28. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. Ms. Wheeler's opinion does not list any specific conditions nor symptoms besides numbness and provides no explanation for her opinion. Tr. 1286. This was a germane reason to reject the opinion.

Second, the ALJ reasoned the objective evidence did not support Ms. Wheeler's opinion, as Ms. Wheeler's notes primarily contained normal examinations and there was no evidence of neck or upper extremity impairment. Tr. 28. A medical opinion may be rejected if it is unsupported by medical

findings. *Bray*, 554 F.3d at 1228; *Batson,* 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Plaintiff asserts the records from the day Ms. Wheeler rendered her opinion further explain the opinion. ECF No. 14 at 11. Plaintiff states Ms. Wheeler's assessment indicates Plaintiff's migraines and his left foot pain were what were "really restricting" his ability to work no more than two to three hours and thus the lack of evidence of a neck or upper extremity impairment is irrelevant. *Id.* This assertion is a mischaracterization of the record.

In a section comprised primarily of Plaintiff's statements, Ms. Wheeler's note states "Migraines and foot pain is really restricting and arms going numb and shoulder pain." Tr. 1351. Two lines down, the note states "Job is landscaping. [Plaintiff] states that he can work 2-3 hours- no machinery work, no ladders stay on ground." *Id.* Nowhere in Ms. Wheeler's records is there any reasoning beyond Plaintiff's self-report for why Plaintiff is limited to two to three hours of work. There are multiple references to Plaintiff's neck pain and arm numbness/tingling but there is no diagnosis or objective evidence of any condition to explain the symptoms. Tr. 1352, 1355. Plaintiff's physical exam was normal on the day Ms. Wheeler provided her opinion. Tr. 1355-56. Other exams were normal as well. Tr. 1363, 1348. This was a germane reason to reject Ms. Wheeler's opinion.

Third, the ALJ found the only record from Ms. Wheeler containing a note regarding a restricted workday consisted of Plaintiff's self-report, which the ALJ found inconsistent with the other evidence. Tr. 28. An opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149. As discussed below, the ALJ properly discounted Plaintiff's statements. The ALJ gave germane reasons for rejecting Ms. Wheeler's opinion.

### 2. Dr. Ignacio

Dr. Ignacio, a reviewing medical consultant, opined in relevant part that Plaintiff must avoid concentrated exposure to heat and humidity and must avoid moderate exposure to noise. Tr. 205. The ALJ gave significant weight to Dr. Ignacio's opinion but rejected the heat/humidity and noise limitations. Tr. 27. As Dr. Ignacio's opinion is contradicted, the ALJ must give specific and legitimate reasons for rejecting the opinion. *See Bayliss,* 427 F.3d at 1216.

First, the ALJ found the evidence did not support the limitations. *Id.* A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. As discussed above, the record includes minimal references to tinnitus or hearing loss symptoms, nor sensitivity to noise or humidity. There are no treating source opinions that reference Plaintiff's

need for a noise or humidity restriction. There are no audiological examinations and Plaintiff did not see a specialist nor seek additional treatment for his hearing loss or tinnitus. This was a specific and legitimate reason to reject Dr. Ignacio's opinion.

Second, the ALJ found Plaintiff's activities did not support the need for the limitations. Tr. 27. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. The ALJ discussed Plaintiff's activities throughout the decision, including his hiking in the mountains, mushroom hunting, playing video games, landscaping, rock climbing, driving, yoga, and weightlifting. Tr. 20, 22-23, 25-27. Several of these activities are outdoor activities that would likely lead to heat/humidity exposure, while others would commonly include exposure to noise.

The ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. Ignacio's opinion.

### 3. Drs. Lewis and Gilbert

Dr. Lewis and Dr. Gilbert, reviewing psychological consultants, rendered opinions regarding Plaintiff's functioning. Tr. 187-92, 202-08. Dr. Lewis opined in relevant part that Plaintiff is capable of work with "limited social interactions" and he "may have occasional difficulty accepting criticism and/or appropriate dealing [with] coworker conflicts." Tr. 191-92. Dr. Gilbert opined in relevant part

that Plaintiff can carry out simple routine tasks and most complex detailed tasks "with occasional lapses in attention" and can completed a normal workday and workweek. Tr. 207. Dr. Gilbert also opined Plaintiff may have occasional difficulty with accepting criticism and/or appropriately dealing with coworker conflicts. *Id.* The ALJ gave the opinions some weight and rejected the limitations regarding occasional lapses in attention and dealing with criticism and coworker conflicts. Tr. 28. As Dr. Lewis and Dr. Gilbert's opinions are contradicted, the ALJ must give specific and legitimate reasons for rejecting the opinion. *See Bayliss,* 427 F.3d at 1216.

First, the ALJ found Plaintiff is capable of simple and routine tasks despite any potential lapses. *Id.* Plaintiff argues that the opinion that Plaintiff would have occasional lapses in attention meant Plaintiff would be off task up to one third of the day and is thus disabled. ECF No. 14 at 14-15. However, this is inconsistent with Dr. Gilbert's opinion, as Dr. Gilbert found Plaintiff can sustain a normal workday and workweek. Tr. 207. Further, it is unclear if Dr. Gilbert intended the "occasional lapses in attention" to apply only to complex detailed tasks or simple routine tasks as well, and the frequency and length of the lapses are unclear. Tr. 207. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ reasonably found that Dr. Gilbert's opinion meant Plaintiff is capable of

performing simple routine tasks during a normal workday/workweek. As this limitation was incorporated in the RFC, the ALJ did not improperly reject a limitation.

Second, the ALJ found the record does not support Plaintiff's need for a limitation regarding accepting criticism or dealing with coworker conflict. Tr. 28. The ALJ noted the record did not demonstrate any difficulties with authority figures and only one altercation with another person. *Id.* An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. While a different interpretation of the medical evidence could be made, the ALJ's interpretation of the longitudinal record—that the record does not demonstrate difficulties with accepting criticism or dealing with conflict with others—is a rational interpretation supported by substantial evidence. *See id.* at 1198 (recognizing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding).

While Plaintiff points to evidence such as Plaintiff's self-report of difficulties with others, and his limited friend group, the record demonstrates Plaintiff has maintained relationships with friends, family members and romantic relationships, Tr. 357, 697, 1118, 1225, and though he expressed some issues with his father and former supervisors, he has never been fired from a job, Tr. 359. Plaintiff reported he does not like being disrespected but did not report any other

issue with authority figures, such as difficulty accepting criticism, and reported he can handle stress and changes. *Id*.

The ALJ gave specific and legitimate reasons to discount Dr. Lewis and Dr. Gilbert's opinions. Plaintiff is not entitled to relief on these grounds.

**E. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 17-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are

insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 33

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 24.

First, the ALJ found Plaintiff received limited treatment. Tr. 24-25. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

Here, Plaintiff had two visits to an orthopedist and emergency department visits, but no ongoing medical care from the alleged onset date of September 22, 2013 through the end of 2015. Tr. 24. Despite ongoing complaints of pain,

ORDER - 34

Plaintiff did not return to an orthopedist for three years. Tr. 25. Plaintiff reported no primary care physicians would see him until his case related to his car accident was settled but did not explain why he did not seek alternative care, nor why he did not seek any emergency or other care for his reported multiple seizures. *See* Tr. 1247. When Plaintiff re-established care in 2015, he did not report that he had any difficulties obtaining care previously but rather only reported he had moved to the area and needed to establish care. Tr. 1277. While Plaintiff was told he should have an ENT evaluation and he reported he would be getting an EEG, he did not obtain either. *See* Tr. 169, 753. Plaintiff did not see a neurologist nor a podiatrist until four years after his alleged onset date, despite earlier referrals. Tr. 1393, 1418. The ALJ's finding was reasonable and this was a clear and convincing reason to discount Plaintiff's statements.

Second, the ALJ found Plaintiff's activities were inconsistent with his reported limitations. Tr. 25. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the

ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Id.* at 1112-13.

Throughout the decision, the ALJ discussed Plaintiff's activities. These activities included landscaping, camping, rock climbing, hiking and being outside, doing yoga, cooking, completing housework including laundry and yardwork and lifting weights. Tr. 1211-12, 1351, 1418. Plaintiff also reported being able to sustain activity for two hours at a time. Tr. 25. This was a clear and convincing reason to reject Plaintiff's statements.

Third, the ALJ found plaintiff made inconsistent statements. Tr. 24-26. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen*, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

Here, Plaintiff made inconsistent statements about how long he was hospitalized after his accident. Tr. 24 (citing to Tr. 686, 1338). Plaintiff also made inconsistent statements about how many hours he is able to engage in activity in a

typical day.  Tr. 25, 104, 158.  Plaintiff's podiatrist did not recommend surgery, Tr. 1365, but Plaintiff reported surgery was recommended, Tr. 1331.  Despite his report of disabling symptoms, Plaintiff reported being very active and engaging in a variety of activities.  Tr. 1212.  Plaintiff reported a need to sleep off migraines and an inability to get out of bed when experiencing migraines yet reported continued activity even with migraines.  Tr. 25, 1254.  This was a clear and convincing reason to reject Plaintiff's statements.

Fourth, the ALJ reasoned Plaintiff had improvement with treatment.  Tr. 27. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti*, 533 F.3d at 1040 (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed, given the reported improvement in both his physical and mental health symptoms with treatment.  Tr. 27, 1246 (reporting improvement in mental functioning with medication); Tr. 1266 (reporting improvement in sleep and mental health symptoms after taking a new medication);

Tr. 1418 (reporting improvement in headaches with medication). The ALJ gave

clear and convincing reasons, supported by substantial evidence, to discount

Plaintiff's symptoms complaints. Plaintiff is not entitled to remand on these

grounds.

### F. Lay Witness Testimony

Plaintiff challenges the ALJ's consideration of the lay witness statement of

Plaintiff's mother Julie Marquis. ECF No. 14 at 16-17. An ALJ must consider the

statement of lay witnesses in determining whether a claimant is disabled. *Stout*,

454 F.3d at 1053. Lay witness evidence cannot establish the existence of

medically determinable impairments, but lay witness evidence is "competent

evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20

C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)

("[F]riends and family members in a position to observe a claimant's symptoms

and daily activities are competent to testify as to her condition."). If a lay witness

statement is rejected, the ALJ "'must give reasons that are germane to each

witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*,

12 F.3d at 919).

Ms. Marquis completed a third-party questionnaire and seizure questionnaire

and wrote a letter regarding Plaintiff's functioning. Tr. 343-50, 351-52, 446. Ms.

Marquis stated Plaintiff has difficulty tolerating lights and noise, Tr. 343, he has

impaired sleep, Tr. 344, he has migraines if he works more than two to three hours and his migraines impact his ability to perform activities, Tr. 344, 446, and he has multiple functional limitation, Tr. 348.  Ms. Marquis did not quantify most of her statements; for example, she indicated Plaintiff's ability to walk is impacted, but she said "I do not know" in response to a question asking how far Plaintiff can walk before needing to rest.  *Id.*  The ALJ gave Ms. Marquis' statement little weight.  Tr. 29.

The ALJ reasoned Ms. Marquis' statements were similar to Plaintiff's own subjective complaints and thus were entitled to little weight for the same reasons Plaintiff's statements were found inconsistent with the longitudinal record.  *Id.* The ALJ defined the longitudinal record as Plaintiff's treatment history, the objective evidence including performance on exams, Plaintiff's daily activities and the inconsistencies between his allegations and the record.  *Id.*  Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness").

Ms. Marquis' statements contain the same information provided by Plaintiff. Both stated Plaintiff has migraines after working two to three hours. Tr. 446, 1212. Both stated Plaintiff has impaired sleep, and difficulty tolerating lights and noise. Tr. 343-44, 1211. Both reported he is capable of many activities but needs some assistance and reminders. Tr. 343-50, 353-60. The seizure questionnaire was based entirely on Plaintiff's self-report as Ms. Marquis never witnessed one of Plaintiff's reported seizures. Tr. 351-52. Ms. Marquis' statements did not offer any information not already offered by the Plaintiff.

As the ALJ gave clear and convincing reasons for discounting Plaintiff's statements, and he properly pointed to those reasons to discount Ms. Marquis' statements, the rejection was proper. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE**.

DATED November 27, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE